## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

Plaintiff,

v.                                                    No. **CR 02-2019 MCA**

**ANTHONY PATRICK TRUJILLO**,

Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Anthony Patrick Trujillo's

*Motion to Dismiss Indictment with Prejudice for Violations of Sixth Amendment Speedy Trial*

*Right; the Interstate Agreement on Detainers; and the Speedy Trial Act* [Doc. No. 19] filed

on September 9, 2005.  The Court held a hearing on Defendant's motion on September 23,

2005.  Having reviewed the parties' submissions, the evidence and argument presented at the

hearing, the relevant law, and being fully advised in the premises, the Court denies

Defendant's motion based on the factual findings and legal analysis set forth below.

## I.      BACKGROUND

On August 8, 2002, the Special Agent John D. Tanberg of the Federal Bureau of

Investigation (FBI) obtained an arrest warrant and filed a *Criminal Complaint* [Doc. 1] in the

United States District Court for the District of New Mexico charging Defendant Anthony

Patrick Trujillo with the commission of two bank robberies in Albuquerque during July 2002.

On November 13, 2002, a federal grand jury indicted Defendant on these two bank-robbery

charges, and another warrant for Defendant's arrest was issued.  [Doc.  2.]

At the time the *Criminal Complaint*, *Indictment*, and arrest warrants were issued in this case, Defendant had not been arrested or taken into custody by federal authorities. Rather, Defendant was in state custody during that time as a result of being arrested by Albuquerque Police on August 3, 2002, and then convicted in state court of robbing a gas station and convenience store.  The state court sentenced Defendant for this conviction on May 15, 2003, and he was transported to the Lea County Correctional Facility in Hobbs to serve his state-court sentence.[1]  Thus, Defendant remained in state custody for a period of approximately thirty-six months from his arrest by Albuquerque Police on August 3, 2002, until July 13, 2005, when he was brought into federal custody by U.S. Marshals pursuant to an *Order for Writ of Habeas Corpus Ad Prosequendum* issued by a United State Magistrate Judge on July 7, 2005.  [Doc. 5, 6, 11.]

On or about October 30, 2003, the United States Marshal's Service transmitted a *Detainer Against Sentenced Prisoner* to the Lea County Correctional Facility (LCCF) in Hobbs, New Mexico, where Defendant was incarcerated on the state charges mentioned above.  An LCCF records clerk acknowledged receipt of the *Detainer* on October 31, 2003, but apparently failed to deliver it to Defendant for his review and signature until June 6, 2005.  [Ex. A to Doc. 19.]  Although Defendant signed the portion of the *Detainer* advising

---

[1]At the hearing on September 23, 2005, defense counsel stated that Defendant also was sentenced for a probation violation on or about September 18, 2002; however, counsel's proffer regarding this probation violation does not change the undisputed fact that the state charges relating to the July 2002 gas station and convenience store robbery remained pending until at least May 15, 2003.

him of his speedy-trial rights, it appears that he did not complete the portion of the form stating whether he wished to invoke these rights.  [Ex. A to Doc. 19.]

Defendant did, however, prepare a *Demand for Speedy Trial* [Doc. 4] in which he invoked his right to a speedy trial on the following charges now pending in this Court:  "bank robbery, warrant issued Aug. 9, 2002." [Doc. 4.]  Although Defendant's *Demand for Speedy Trial* includes a *Certificate of Mailing* indicating that he mailed a copy to this Court and to the "U.S. District Attorney" on May 19, 2005, this document was not actually filed in this Court until June 14, 2005.  [Doc. 4.]

At the hearing on September 23, 2005, neither party disputed that Defendant was notified of the existence of pending federal charges around the time his request for reclassification was denied by state prison officials on or about May 12, 2005. [Ex. B, C to Doc. 19.]  Thus, he was not relying upon the information contained in the *Detainer* when he prepared his *Demand for Speedy Trial*.  Indeed, his *Demand for Speedy Trial* predates his signature on the *Detainer*.

At the time he prepared and filed his *Demand for Speedy Trial*, Defendant was acting *pro se*, and no attorney had entered an appearance or been appointed to represent him in this matter.  Upon being taken into federal custody on July 13, 2005, however, counsel was appointed for Defendant [Doc. 7], and his attorney appeared at his arraignment on the following day [Doc. 8].  At the arraignment, the United States Magistrate Judge set a deadline for pretrial motions of August 3, 2005.  [Doc. 8.]

On August 4, 2005, Defendant filed an unopposed motion to extend the pretrial

motions deadline until September 14, 2005.  [Doc. 12.]  While that motion was pending, the

Court set a trial date of September 13, 2005.  [Doc. 13.]  On August 11, 2005, Defendant

filed an unopposed motion to continue the September 13 trial date.  [Doc. 14.]  Making the

necessary findings under 18 U.S.C. § 3161, I granted Defendant's motion for a continuance

on August 16, 2005, and allowed an extension of the pretrial motions deadline until

September 9, 2005.  [Doc. 15, 16.]  On the latter date, Defendant filed his *Motion to Dismiss*

[Doc. 19] as well as a *Motion in Limine* [Doc. 17] and a *Renewed Notice of Demand for*

*Speedy Trial* [Doc. 18].  The case is currently set for trial on a trailing docket beginning on

October 11, 2005.  [Doc. 20.]

## II.  ANALYSIS

Defendant's motion seeks dismissal of the *Indictment* in this case under the provisions

of the Speedy Trial Act (STA), 18 U.S.C. §§ 3161 to 3174, the Interstate Agreement on

Detainers (IAD), 18 U.S.C. App. 2, and the Speedy Trial Clause of the Sixth Amendment to

the United States Constitution.  I first address the relatively straightforward issues posed by

the IAD and the STA in this context before turning to a more detailed analysis of

Defendant's Sixth Amendment right to a speedy trial.

### A.   The Interstate Agreement on Detainers

The IAD prescribes procedures for transferring a prisoner from a state or territory of

incarceration to a jurisdiction seeking to prosecute him.  See United States v. Martinez, 376

F. Supp. 2d 1168, 1172 (D.N.M. 2004).  The United States is a party to the IAD and is

therefore bound by this agreement when activating its provisions by filing a detainer against

a state prisoner.  See United States v. Mauro, 436 U.S. 340, 349, 354 (1978).  The

requirements of the IAD do not apply, however, until Defendant began serving a term of

imprisonment after being sentenced in state court.  See 18 U.S.C. App. 2, Art. III(a); United

States v. Wilson, 719 F.2d 1491, 1494-95 (10th Cir. 1983).

Article III of the Interstate Agreement on Detainers Act provides, in relevant part, that:

(a) Whenever a person has entered upon a term of imprisonment in a penal
or correctional institution of a party state, and whenever during the
continuance of the term of imprisonment there is pending in any other party's
state any untried Indictment, Information, or Complaint on the basis of which
a detainer has been lodged against a prisoner, he should be brought to trial
within 180 days after he shall have caused to be delivered to the prosecuting
officer an  appropriate court of the prosecuting officer's jurisdiction, written
notice of the place of his imprisonment and his request for final disposition to
be made of the Indictment, Information, or Complaint....

(b) The written notice and request for final disposition referred to in
paragraph (a) hereof shall be given or sent by the prisoner to the warden,
commissioner of corrections, or other official having custody of him, who
shall promptly forward it together with the certificate to the appropriate
prosecuting official and court by registered or certified mail, return receipt
requested.

18 U.S.C. App. 2, Art. III.  For purposes of triggering the IAD's 180-day time limit for

bringing a defendant to trial, "[t]he operative language from this section is when the prisoner

'shall have caused to be delivered to the prosecuting officer and the appropriate court' a

request for final disposition."  Martinez, 376 F. Supp. 2d at 1172.

The Supreme Court has interpreted this operative language to mean that "the 180-

time period in Article III(a) of the IAD does not commence until the prisoner's request for

final disposition of the charges against him has *actually been delivered to the court and*

*prosecuting officer of the jurisdiction that lodged the detainer against him*."  Fex v.

Michigan, 507 U.S. 43, 52 (1993) (emphasis added).  While acknowledging that this interpretation left open the possibility that prison officials might avoid triggering the IAD's 180-day time limit by neglecting to forward a defendant's request to the court and the prosecutor in an expeditious manner, the majority opinion in Fey nevertheless decided that arguments in favor of foreclosing this possibility are "more appropriately addressed to the legislatures of the contracting States, which adopted the IAD's text." Id.  Thus, the bright-line rule articulated in Fey provides no remedy of dismissal under the IAD for neglect or delay in bringing a defendant to trial that predates the delivery of that defendant's request for a final disposition to the court and the prosecutor.  See United States v. Paredes-Batista, 140 F.3d 367, 374-75 (2d Cir. 1998); United States v. Lualemaga, 280 F.3d 1260, 1263-65 (9th Cir. 2002).

Although the record reflects that Defendant mailed his *Demand for Speedy Trial* to this Court and the "U.S. District Attorney" on May 19, 2005 [Doc. 4], that document was not actually filed in this Court until June 14, 2005.  Similarly, although the record reflects that Defendant signed the portion of the *Detainer* advising him of his speedy-trial rights under the IAD on June 6, 2005 [Ex. A to Doc. 19], that signed *Detainer* was not actually delivered to this Court until it was made an exhibit to  Defendant's *Motion to Dismiss* [Doc. 19] filed on September 9, 2005.  Thus, under the rule articulated in Fey, the earliest date on which Defendant triggered the IAD's 180-day time limit was June 14, 2005, when his *Demand for Speedy Trial* [Doc. 4] was filed in this Court.

There are less than 180 days between June 14, 2005, and the current trial setting of

October 11, 2005.  Therefore, the IAD's 180-day time limit for bringing Defendant to trial has not yet expired, and this statutory time limit provides no basis for dismissing the *Indictment*.

> **B.     The Speedy Trial Act**

The STA generally prescribes a 30-day period from the date of a defendant's arrest until the date of his indictment, see 18 U.S.C. § 3161(b), and a 70-day period from the date of the indictment or arraignment until the date that jury selection and trial commences, see 18 U.S.C. § 3161(c)(1).  The filing of a federal complaint does not trigger the 30-day deadline between arrest and indictment, however, when federal authorities have neither arrested the Defendant nor served him with a summons in connection with the charges that are the subject of that complaint.  See United States v. Bagster, 915 F.2d 607, 611 (10th Cir. 1990); United States v. Henson, 945 F.2d 430, 436 (1st Cir.1991); United States v. Bloom, 865 F.2d 485, 491 (2d Cir. 1989); United States v. Johnson, 815 F.2d 309, 312 (5th Cir.1987).

The Tenth Circuit has held "that a person is not 'arrested in connection with' a charge, within the meaning of section 3161(b) of the Speedy Trial Act, unless there is some coincidence of (1) a pending federal complaint and (2) federal custody based on that complaint.  Under this rule, if a complaint is filed before federal arrest pursuant to that complaint, the Speedy Trial Act is triggered at the moment of arrest."  Bagster, 915 F.2d at 611.  Further, a federal detainer filed against a defendant does not constitute an arrest within the meaning of the STA.  See id. at 611 n.3.  As the Fourth Circuit recently observed, "when

an individual is lawfully being held to answer to state charges, a 'criminal complaint coupled with an unexecuted arrest warrant and a federal detainer' do not trigger the [Speedy Trial] Act." United States v. Woolfolk, 399 F.3d 590, 595 (4th Cir. 2005) (quoting United States v. Thomas, 55 F.3d 144, 148  (4th Cir. 1995)).

Thus, the 30-day deadline in 18 U.S.C. § 3161(b) was not triggered in this case until Defendant was actually brought into federal custody on July 13, 2005.  By that time, Defendant was already indicted, so there was no violation of the STA's 30-day deadline between arrest and indictment.

The 70-day deadline prescribed by 18 U.S.C. § 3161(c)(1) also was not violated in this case.  "Where a defendant is arraigned after he is indicted, the statutory time period starts to run on the date of the arraignment." United States v. Snyder, 707 F.2d 139, 142 (5th Cir. 1983); accord United States v. Kalady, 941 F.2d 1090, 1094 (10th Cir. 1991); United States v. Montoya, 827 F.2d 143, 152 (7th Cir. 1987); United States v. Wilson, 720 F.2d 608, 609 (9th Cir. 1983).  Defendant was not arraigned in this case until July 14, 2005.  [Doc. 8.] Therefore, the STA's 70-day time limit for bringing him to trial was not triggered until that date.

Like the IAD, the STA simply does not provide for dismissal of the *Indictment* based on delays that preceded the filing of Defendant's *Demand for Speedy Trial* and his arraignment on the charges listed in the *Indictment*.  While the STA requires attorneys for the Government to cause a detainer to be filed and imposes a duty to advise a defendant of the right to demand a trial under these circumstances, see 18 U.S.C. § 3161(j)(1), the statute

does not provide for sanctions in the form of dismissal in the event that such requirements are not satisfied, see 18 U.S.C. § 3162; Paredes-Batista, 140 F.3d at 375. Defendant acknowledges this point in his motion. [Doc. 19, citing United States v. Valentine, 783 F.2d 1413, 1415-16 (9th Cir. 1986), and United States v. Anderton, 752 F.2d 1005, 1008 (5th Cir. 1985).]

I next evaluate the STA's application to any delays which occurred after Defendant's arraignment on July 14, 2005. This case was initially set for trial on September 13, 2005, which is less than 70 days from the date of Defendant's arraignment. On August 11, 2005, however, Defendant filed a motion to continue the trial setting of September 13, 2005. [Doc. 14.] The Court granted Defendant's motion to continue on August 16, 2005, and set a new trial date of October 11, 2005, based on an express finding that the "ends of justice" would be served by such a continuance. [Doc. 15] Thus, there is no dispute that the time between the October trial setting and the previous trial setting in September is to be excluded from the STA's 70-day time limit under 18 U.S.C. § 3161(h)(8)(A).

Additional exclusions may apply pursuant to 18 U.S.C. § 3161(h)(1)(F) as a result of the pretrial motions Defendant's counsel has filed since his arraignment. See generally United States v. Vogl, 374 F.3d 976, 985-86 (10th Cir. 2004) (concluding that such exclusions are automatic and do not require a showing of actual delay); see, e.g., United States v. Rogers, 921 F.2d 975, 983-84 (10th Cir. 1990) (concluding that the exclusion of time under 18 U.S.C. § 3161(h)(1)(F) applies to a defendant's motion to dismiss on speedy trial grounds). "Subsection (h)(1)(F) excludes all time, regardless of reasonableness,

between the filing of the pretrial motion and the hearing thereon, as well as all time following the hearing during which the court awaits the filing of additional materials by the parties that are needed for proper disposition of the motion." United States v. Mora, 135 F.3d 1351, 1355 (10th Cir. 1998). Once such pretrial motions are fully briefed and heard, the Court "has thirty days to decide the matter, which is also excludable" under 18 U.S.C. § 3161(h)(1)(J). United States v. Lugo, 170 F.3d 996, 1001 (10th Cir. 1999).

In this case, Defendant filed a motion for an extension of time on August 4, 2005, which was granted 12 days later on August 16, 2005. [Doc. 12, 14.] Defendant also filed a motion to continue on August 11, 2005, which was granted five days later on August 16, 2005. [Doc. 17, 19.] As a result of these motions, the 12-day period between August 4, 2005, and August 16, 2005, is excludable under 18 U.S.C. § 3161(h)(1)(F) and (J), in addition to the exclusion under 18 U.S.C. § 3161(h)(8)(A) for the 28-day period between the trial settings of September 13, 2005, and October 11, 2005.

Defendant also filed a motion in limine and a motion to dismiss on September 9, 2005. [Doc. 17, 19.] Although this *Memorandum Opinion and Order* provides a prompt disposition of the motion to dismiss, the briefing and hearing on the motion in limine is not yet completed, nor has the Court been afforded the 30-day period specified in 18 U.S.C. § 3161(h)(1)(J) to decide the motion in limine. Accordingly, the period of time from the filing of Defendant's motions on September 9, 2005, until the disposition of Defendant's motion in limine is also excludable from the STA's 70-day time limit.

Once the applicable exclusions under 18 U.S.C. § 3161(h) are taken into account, a

total of less than 70 countable days has elapsed from the date of Defendant's arraignment on

July 14, 2005, until his scheduled trial date on October 11, 2005.   Therefore, there has been

no violation of the time limits specified in the STA that would warrant a dismissal of the

*Indictment* in this case.

### C.   The Sixth Amendment's Speedy Trial Clause

The Sixth Amendment to the United States Constitution states, in relevant part, that:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial,

by an impartial jury of the State and district wherein the crime shall have been committed

...."   The Supreme Court has interpreted this clause as reflecting a design "to minimize the

possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless

substantial, impairment of liberty imposed on an accused while released on bail, and to

shorten the disruption of life caused by arrest and the presence of unresolved criminal

charges."   United States v. MacDonald, 456 U.S. 1, 6 (1982).

The Supreme Court has held that "it is *either* a formal indictment or information *or*

*else* the actual restraints imposed by arrest and holding to answer a criminal charge that

engage the particular protections of the speedy trial provision of the Sixth Amendment,"

whichever comes first.   United States v. Marion, 404 U.S. 307, 320 (1971) (emphasis added);

accord Jackson v. Ray, 390 F.3d 1254, 1261 (10th Cir. 2004); Rashad v. Walsh, 300 F.3d

27, 36 (1st Cir. 2002); Thomas, 55 F.3d at 149 n.4.   "'Arrest,' however, means federal arrest.

Arrest by state authorities on state charges does not trigger the speedy trial provisions of the

Federal Constitution" in this context.   United States v. Gomez, 67 F.3d 1515, 1521 (10th Cir.

1995).

In contrast to the STA or the IAD, the authorities cited above provide that a defendant's Sixth Amendment right to a speedy trial may be triggered by the filing of an indictment even when the defendant has not yet been arrested or arraigned and has not made any specific demand for a final disposition of the charges.  See, e.g., Rashad, 300 F.3d at 36. "The fact that there has been no violation of the Speedy Trial Act . . . does not preclude a finding that [Defendant] was denied his Sixth Amendment right to a speedy trial."  United States v. Bloom, 865 F.2d 485, 491 (2d Cir. 1989) (citing 18 U.S.C. § 3173).  Similarly, a violation of the Speedy Trial Act does not necessarily amount to a Sixth Amendment violation.  See Gomez, 67 F.3d at 1523.  Thus, "analysis of a Speedy Trial Act claim is separate from analysis of a Sixth Amendment violation."  Id. at 1523 n.10.

The date of Defendant's *Indictment* on November 13, 2002, provides the starting point for the Court's Sixth Amendment analysis in this case.  Starting from this date, the Court's task is to evaluate the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  Barker v. Wingo, 407 U.S. 514, 530 (1972); accord Jackson, 390 F.3d at 1260; Rashad, 300 F.3d at 33-34.  This four-factor balancing test "was designed to be a 'functional' one."  United States v. Schreane, 331 F.3d 548, 553 (6th Cir. 2003) (quoting Barker, 407 U.S. at 521).  "[N]o one factor constitutes a 'necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.'"  Id. (quoting Barker, 407 U.S. at 533).  "Rather, they are related factors and must be considered together with such other circumstances as may be relevant."  Barker, 407 U.S. at 533.

In this case, the length of delay from the *Indictment* on November 13, 2002, until the scheduled trial date of October 11, 2005, is one month short of three years.  I find that this is a significant period of delay which meets the threshold necessary to warrant further inquiry concerning the other three factors articulated in Barker, 407 U.S. at 530.  See Schreane, 331 F.3d at 553; Rashad, 300 F.3d at 36.

In reviewing the reasons for this delay, I partition this period of almost three years according to which party bears more responsibility for each portion of the delay.  See Schreane, 331 F.3d at 553-54; Rashad, 300 F.3d at 36.  I also recognize that "[n]ot all delays are susceptible to equal blame."  Schreane, 331 F.3d at 553.  Delays by the prosecution that are motivated by bad faith, harassment, or an attempt to gain unfair tactical advantages at trial weigh more heavily in a defendant's favor than prosecutorial delays caused by mere negligence, understaffing, or miscommunication.  See id. at 553-54.  Where the prosecution has valid reasons for the delay, those reasons weigh in the prosecution's favor.  See id. at 554.

I begin my analysis of the reasons for the delay with the period of approximately six months between the filing of the *Indictment* on November 13, 2002, and the completion of Defendant's sentencing in state court on or about May 15, 2003.  The ongoing proceedings in state court before and during this period provide valid reasons for this delay that weigh in favor of the prosecution in this case.[2]  "[T]o require the federal government to prosecute

---

[2]I note that even if the starting point for my Sixth Amendment analysis were the filing of the *Criminal Complaint* instead of the filing of the *Indictment*, this analysis would not change significantly because the state proceedings were already underway during the period between those two filings, and thus the prosecution had a valid reason for delay during this period.

an accused before state proceedings have run their course 'would be to mire the state and federal systems in innumerable opposing writs, to increase inmate transportation back and forth between the state and federal systems with consequent additional safety risks and administrative costs, and generally to throw parallel federal and state prosecutions into confusion and disarray.'" Id. at 555 (quoting Thomas, 55 F.3d at 150-51).  "Moreover, 'if the government must prosecute the defendant without knowing what his punishment will be at the state level, it will be unable to consider the state's punishment in determining what charges to bring [--if any at all--as well as what punishment to seek] to make the totality of the state and federal  convictions [and punishments] commensurate with the crime.'"  Id. (quoting Thomas, 55 F.3d at  150 n. 6).  On these grounds, "'[s]imply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay'" that weighs in favor of the prosecution.  Id. (quoting United States v. Grimmond, 137 F.3d 823, 828 (4th Cir. 1998)).

The next segment of pretrial delay is the period of approximately five and one-half months from Defendant's state-court sentencing on or about May 15, 2003, until the filing of the detainer on or about October 30, 2003.  This period of the delay may be attributed to the prosecution in this case insofar as it received notice that the state-court proceedings had concluded during that period or otherwise could have readily determined this fact.  See id. at 555-56; Rashad, 300 F.3d at 37.  This factor does not weigh heavily against the

---

Similarly, my analysis does not change significantly if I take into account defense counsel's proffer regarding a probation-violation hearing on September 18, 2002, because it is not disputed that the state charges on the gas station and convenience store robbery remained pending after that date.

prosecution, however, as there is no evidence from which to reasonably infer that the prosecution's delay during this period was intentional or in bad faith.  See Schreane, 331 F.3d at 554.  Further, federal prosecutors must be afforded a reasonable amount of time after the sentencing date to ascertain where a state prisoner is serving his sentence so that they know where to send the *Detainer*.

After the federal prosecutors transmitted the *Detainer* to state authorities on or about October 30, 2003, there was another delay of approximately eighteen and one-half months from that date until Defendant prepared and mailed his *Demand for Speedy Trial* [Doc. 4] on or about May 19, 2005.  Based on the parties' stipulations at the hearing on September 23, 2005, it is reasonable to infer that this period of delay is attributable to the State's failure to properly handle the *Detainer* and notify Defendant of its existence in a timely manner. Instead of relying on the *Detainer* to learn of the existence of the pending federal charges and assert his right to a speedy trial, it appears that Defendant found out about the existence of these charges in May 2005 during the course of an otherwise unrelated administrative proceeding before the New Mexico Corrections Department's Classification Committee. [Ex. B, C to Doc. 19.]

At the hearing on September 23, 2005, Defendant offered no evidence that the State's delay in delivering the *Detainer* to him is attributable to federal prosecutors or was the result of bad faith or an improper motive.  On the other hand, the prosecution offered no evidence of any valid reason for the State's delay.  Based on this sparse record, the most that can reasonably inferred is that state prison officials were negligent in their handling of the

*Detainer* and that this negligence caused the delay from the United States Marshal's transmittal of the *Detainer* to LCCF on October 30, 2003, until Defendant prepared and mailed his *Demand for Speedy Trial* [Doc. 4] on May 19, 2005.  See Jackson, 390 F.3d at 1262 (concluding that such unexplained delays are attributed to negligence by the State).

I cannot reasonably infer that federal prosecutors or other components of the federal criminal justice system were responsible for this delay because the fact that federal officials have not received a prompt demand for a speedy trial from a defendant subject to a federal detainer does not necessarily mean that the detainer was not delivered to that defendant. Even where state prison officials properly deliver detainers to their inmates, in many cases such inmates may elect not to demand a speedy trial, and in some cases (as here), the portion of the detainer completed by a defendant may fail to specify whether he or she is invoking the right to a speedy trial.  [Ex. A to Doc. 19.]  On these facts, it is sheer speculation to say that federal authorities had any information which should have caused them to follow up on the status of detainers they have lodged by making particularized inquiries of state prison officials as to whether the subject of each detainer has yet to invoke his or her right to a speedy trial.

While I do not condone the state prison officials' apparent negligence in this case, the delay it caused does not carry significant weight in my analysis of Defendant's right to a speedy trial because this negligence is not attributable to either party in this case.  Where the delay "stemmed from the State's apparent failure to properly handle the detainer" rather than "governmental error or inadequacies in the federal criminal system," "the State's mistakes

16

will not be factored against either party."  Schreane, 331 F.3d at 556 n.5.

From the preparation and mailing of Defendant's *Demand for Speedy Trial* on May 19, 2005, there was a delay of approximately two months until he was brought into federal custody and arraigned on the *Indictment* in this case.  This period of delay is attributable to the prosecution, but does not weigh heavily in the Court's analysis.  See Thomas, 55 F.3d at 150.  At the hearing on September 23, 2005, defense counsel stated that he was not faulting State prison officials for a lack of reasonable diligence in forwarding Plaintiff's *Demand for Speedy Trial* to the Court and the United States Attorney.  Similarly, there is no evidence of a lack of reasonable diligence by federal prosecutors in moving for a *Writ of Habeas Corpus Ad Prosequendum* [Doc. 5] and effecting the transfer of custody from state to federal authorities after Defendant's *Demand for Speedy Trial* was filed in this Court.

The next and final delay consists of the period of approximately three months from Defendant's arraignment on July 14, 2005, until the scheduled trial date on October 11, 2005.  Delays during this period are attributable to Defendant's need for trial preparation and his filing of pretrial motions.  These are valid reasons for delay which do not weigh against the prosecution for Sixth Amendment purposes.  See Rashad, 300 F.3d at 36; Grimmond, 137 F.3d at 829 n.7.

Thus, of the total period of approximately 35 months between the filing of the *Indictment* and the scheduled trial date in this case, there are valid reasons for about nine months of the delay which weigh in favor of the prosecution.  There are about seven and one-half months of delays which weigh slightly in Defendant's favor insofar as they are

attributable to the time the prosecution took to lodge the *Detainer* with state authorities and to effect Defendant's transfer from state to federal custody so that proceedings in this Court could commence.  Finally, there are about eighteen and one-half months of delay attributable to the State's negligence in processing the *Detainer* which do not weigh significantly in either parties' favor.

This assessment of the reasons for the delay in bringing this case to trial must be viewed in relation to the other remaining <u>Barker</u> factors, namely Defendant's assertion of his Sixth Amendment right and the extent to which he was unfairly prejudiced by the delay.  <u>See</u> <u>Rashad</u>, 300 F.3d at 37 n.7.  Accordingly, I next analyze the timing of Defendant's assertion of his Sixth Amendment right and the extent to which he is unfairly prejudiced by delays attributable to the prosecution.

The record in this case indicates that Defendant first asserted his right to a speedy trial on or about June 14, 2005, when his *Demand for Speedy Trial* [Doc. 4] was filed in this Court.  At the hearing on September 23, 2005, the parties agreed that Defendant was notified of the existence of the pending federal charges on or about May 12, 2005, during the course of an otherwise unrelated administrative proceeding before the New Mexico Corrections Department's Classification Committee.  [Ex. B, C to Doc. 19.]  Defendant promptly prepared and mailed his *Demand for Speedy Trial* on or about May 19, 2005, several days before he received and signed the *Detainer* in this case.

As Defendant's assertion of his right to a speedy trial is clear on the face of his *Demand for Speedy Trial*, he cannot be faulted for failing to indicate whether he wished to

invoke this right when he filled out and signed the *Detainer* on June 6, 2005. On these facts, Defendant also cannot be faulted for the 31 months of delay between the filing of the *Indictment* and the filing of his *Demand for Speedy Trial*.

It is not reasonable to expect Defendant to assert his right to a speedy trial during this period when he did not know of the existing of the pending charges. Thus, the delay in asserting this right that is attributable to such a lack of knowledge is not weighted against the Defendant for purposes of the Court's Sixth Amendment analysis. See Schreane, 331 F.3d at 557; Jackson, 390 F.3d at 1263.

On the other hand, this case is not one in which the prosecution failed to act promptly after receiving notice of Defendant's assertion of his right to a speedy trial. Here Defendant was transferred from state to federal custody, appointed counsel, and arraigned on the pending federal charges within one month of the filing of his *Demand for Speedy Trial*. [Doc. 4, 8.] In this respect, this case is distinguishable from Smith v. Hooey, 393 U.S. 374, 375 (1969), in which a federal prisoner's repeated demands for a speedy trial went unheeded by state prosecutors for seven years. Unlike Hooey, the federal prosecutors in this case are not claiming that Defendant's incarceration in another jurisdiction absolves them of their duty to lodge a detainer and promptly bring the matter to trial in response to his demand. Cf. Rashad, 300 F.3d at 37 n.7 (noting relationship between the assertion of the right and the reasons for the delay). In light of the prosecution's prompt response to Defendant's *Demand for Speedy Trial*, his assertion of his Sixth Amendment right in this case does not carry as much as weight as the facts in Hooey.

Turning to the fourth and final <u>Barker</u> factor, the Supreme Court has identified three relevant forms of prejudice in speedy trial cases:  (1) "oppressive pretrial incarceration"; (2) "anxiety and concern of the accused"; and (3) "'the possibility that [the accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence.'"  <u>Doggett v. United States</u>, 505 U.S. 647, 654 (1992) (quoting <u>Barker</u>, 407 U.S. at 532).  In the context alleged here, where Defendant is already incarcerated in a state facility and he was not formally notified of the pending federal charges until recently, the most serious of these three forms of prejudice "'is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'"  <u>Schreane</u>, 331 F.3d at 557-58 (quoting <u>Barker</u>, 407 U.S. at 532); <u>see</u> <u>Grimmond</u>, 137 F.3d at 830.

On the facts of this case, however, "the presumption of prejudice discussed in <u>Doggett</u> is not automatically triggered whenever an accused's trial is delayed."  <u>Schreane</u>, 331 F.3d at 559 (citation omitted).  "Instead, '[w]hen a defendant is unable to articulate [or demonstrate] the harm caused by delay, the reason for the delay (factor 2) will be used to determine whether the defendant was presumptively prejudiced.'"  <u>Id.</u> (quoting <u>United States v. Mundt</u>, 29 F.3d 233, 236 (6th Cir. 1994)).  Consequently, the Court's focus is "on the question of whether the delays attributable to the [prosecution] compromised the preparation or presentation of the defendant's case."  <u>Rashad</u>, 300 F.3d at 41.

Here the length of the delays attributable to the prosecution is not nearly as extreme as the six-year delay attributed to the prosecution in <u>Doggett</u>.  Thus, Defendant is not relieved of the burden of making a particularized showing of actual prejudice in this case.

See Jackson, 390 F.3d at 1264 n.4 (collecting cases from other circuits).

Defendant's motion papers rely on presumptive prejudice alone and do not point to any specific evidence that the delays attributable to the prosecution have prevented him from preparing or presenting any aspect of his defense.  In particular, Defendant's motion

> has not identified any witness that was unavailable as a result of the delay. Nor has he alleged that any witness was unable accurately to recall the events in question.  [Defendant] does not contend that any exculpatory evidence was lost.  Nor has he identified any evidence that was unavailable because of the delay.  In sum, there is no evidence that [Defendant's] defense was impaired by the delay.

Grimmond, 137 F.3d at 830.

At the hearing on September 23, 2005, Defendant again failed to present any specific evidence of actual prejudice caused by delays attributable to the prosecution.  Instead, he merely made a proffer that his investigator's preliminary attempts to locate some of the witnesses to the alleged bank robberies had not yet been successful.  Defendant has not shown that such witnesses are, in fact, unable to be discovered by means of a diligent search, and in the event that Defendant is prepared to make such a showing, the Court invites him to file an expedited discovery motion requesting that the prosecution turn over its information regarding the witness' current whereabouts.  I also remind the prosecution of its obligations to turn over any exculpatory information under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.

Moreover, while Defendant correctly points out the importance of identification testimony by eyewitnesses to the alleged bank robbery, the passage of time between the date(s) of such witness identifications and the trial date does not necessarily prejudice the

defense.  "As the time between the commission of the crime and the trial lengthens, witnesses may become unavailable or their memories may fade.  If the witnesses support the prosecution, its case will be weakened . . . [a]s it is the prosecution which carries the burden of proof."  Barker, 407 U.S. at 521; accord Schreane, 331 F.3d at 558.  For these reasons, generalized concerns about the potential memory loss or unavailability of witnesses for the prosecution does not amount to a particularized showing of unfair prejudice to the defense.  See Gomez, 67 F.3d at 1522-23.

The witnesses to whom defense counsel referred at the hearing on September 23, 2005, are the prosecution's witnesses to the alleged bank robberies, and thus their absence, loss of memory, or impeachment on cross-examination is likely to favor the defense, not the prosecution.  Based on the evidence of record, Defendant has not shown actual prejudice, and this factor does not weigh significantly in his favor for purposes of the Court's Sixth Amendment analysis.  See Rashad, 300 F.3d at 42-43; Schreane, 331 F.3d at 558-59; Grimmond, 137 F.3d at 830.

While some of the factors discussed above are inconclusive or may weigh slightly in Defendant's favor, I find it more significant that there has been no showing that the portion of the delay attributable to the prosecution resulted from any improper motive or caused any substantial and specific prejudice to the defense.  See Anderton, 752 F.2d at 1008.  Considering these factors as a whole, I conclude that Defendant has not shown that his Sixth Amendment right to a speedy trial was violated in this case.  Therefore, his motion to dismiss is denied.

As Defendant's trial has not yet occurred, however, my ruling at this time does not preclude Defendant from reasserting his speedy-trial rights with respect to any pretrial delays that may happen in the future. Defendant also is not precluded from seeking reconsideration of my ruling in the event that he comes forward with new evidence to show how and why the delays attributable to the prosecution in this case unfairly prejudiced his defense. To the extent that such prejudice may be cured by requiring the prosecution to turn over additional information in discovery (such as the current whereabouts of its witnesses), Defendant will be afforded a reasonable opportunity to file an expedited discovery motion on this topic, and I again remind the prosecution of its continuing duty to turn over exculpatory information under <u>Brady</u> and its progeny.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant has not shown a violation of his right to a speedy trial under the IAD, the STA, or the Sixth Amendment's Speedy Trial Clause.

**IT IS THEREFORE ORDERED** that Defendant's *Motion to Dismiss Indictment with Prejudice for Violations of Sixth Amendment Speedy Trial Right; the Interstate Agreement on Detainers; and the Speedy Trial Act* [Doc. No. 19] is denied.

**SO ORDERED** this 27th day of September, 2005, in Albuquerque, New Mexico.

_____

**M. CHRISTINA ARMIJO**
UNITED STATES DISTRICT JUDGE